FULL AND FINAL SETTLEMENT AGREEMENT OF ALL CLAIMS

This Full and Final Settlement Agreement Of All Claims is entered into on May 26, 2005 between Named Plaintiffs Serena McDermott and Jennifer Gentry, the class of opt-ins they represent (collectively "Plaintiffs"), and Defendant Cracker Barrel Old Country Store, Inc. ("Defendant" or "Cracker Barrel") in the matter of *Serena McDermott, et al. v. Cracker Barrel Old Country Store, Inc.*, Civil Action No. 4:99-CV-001-HLM, pending in the Northern District of Georgia, Rome Division (the "Action").

In their January 4, 1999 Complaint, and an Amended Complaint filed May 6, 1999, Plaintiffs alleged that Defendant had violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA"), by failing to compensate servers properly for the performance of alleged non-server duties (the "Server Claim"), and by requiring employees to wait "off the clock" after store closing to exit the restaurant (the "Off-The-Clock Claim"). Plaintiffs sought minimum wage compensation for time spent performing alleged non-server work, minimum wage and/or overtime compensation for alleged involuntary off-the-clock waiting time, liquidated damages, and attorneys' fees and costs. Defendant denied each of Plaintiffs' claims in the Action, denied Plaintiffs were entitled to any relief, and denied that the Action could properly be maintained as a collective action under § 216(b) of the FLSA.

Plaintiffs sought a Court Order to send notice to a class of allegedly similarly-situated present and former employees of Cracker Barrel. On March 17, 2000, the Court granted Plaintiffs' motion, conditionally certifying a class of all hourly employees of Cracker Barrel who worked as servers (in states other than Montana and Minnesota), or who worked the second shift until closing, "since January 1, 1996." (March 17, 2000 Order.) After notice was issued, 10,988 individuals filed Consent to Join forms prior to the Court's May 23, 2001 deadline pursuing one or both of these claims.

After discovery, Defendant filed a motion to decertify the Server Claims and the Off-The-Clock Claims. Defendant also filed a motion for summary judgment regarding the Server Claims and a Motion for Partial Summary Judgment regarding whether the Defendant's alleged violations were wilfull. On February 27, 2004, the Court granted Defendant's motion to decertify the class with respect to the Server Claims, but denied Defendant's motion to decertify the class with respect to the Off-The-Clock Claims. On March 2, 2004, the Court granted Defendant's motion for summary judgment regarding the Server Claims, dismissing all Server Claims with prejudice, but denied the Defendant's Motion for Partial Summary Judgment regarding whether any alleged violations by Defendant were willful.

Plaintiffs recognize that their ability to recover all or part of the relief sought in this Action is subject to numerous risks, including but not limited to the following: (i) the Court may determine trial of the Off-The-Clock Claims on a collective basis is not possible and decertify the claim; (ii) the Court or jury may determine Plaintiffs are not entitled to recover for their Off-The-Clock Claims; (iii) the Court or jury may determine that some or all of the Plaintiffs are not entitled to damages or are entitled to an amount

1

of damages less than the amount sought by Plaintiffs; (iv) the Court may determine under 29 U.S.C. § 260 that the act or omission giving rise to the Action was in good faith and that Defendant had reasonable grounds for believing that its act or omission was not a violation of the FLSA and may award no liquidated damages; (v) the Court or jury may determine that any alleged violation of the FLSA was not willful within the meaning of 29 U.S.C. § 255; and (vi) the Court of Appeals may determine that the Action could not properly be maintained as a collective action within the meaning of 29 U.S.C. § 216(b) for the Off-The-Clock Claims and/or that the Server Claims were properly dismissed.

  Defendant recognizes that it is also subject to numerous risks in this case, including, but not limited to, the following: (i) a jury could determine that it violated the Plaintiffs' rights regarding their Off-The-Clock Claims and award full relief for 3 years including liquidated damages, for the lack of good faith and willfulness of its actions; (ii) the Court and Court of Appeals could affirm this recovery; and/or (iii) the Court of Appeals could reverse the determinations by the Court that the Defendant was due summary judgment on the Plaintiffs' Server Claims, that the Defendant was due partial summary judgment on the wilfullness of its actions regarding the Server Claims, and/or that the Defendant's motion to decertify regarding Plaintiffs' Server Claims was due to be granted.

  Accordingly, in order to avoid the uncertainty, burdens, and expense of further litigation, and without admission or finding of liability or wrongdoing on the part of Cracker Barrel, such being expressly denied by Defendant, Plaintiffs and Defendant have determined that it is in the best interests of the parties to resolve the claims asserted in the Action on the following terms and conditions:

1. <u>Definitions</u>:

  a. "Cracker Barrel" or "Defendant" means Cracker Barrel Old Country Store, Inc.
  b. "Defendant's Counsel" means R. Lawrence Ashe, Jr., Nancy Rafuse, and Tracey T. Barbaree of the law firm Ashe, Rafuse & Hill LLP and any other lawyers or firms associated with Ashe, Rafuse & Hill LLP in the representation of Defendant in this Action.
  c. "Effective Date" means the date of the signing of this Agreement.
  d. "Final Approval Order" means the Order finally approving this Settlement Agreement, as more fully described in Section 5.e below.
  e. "Opt-in Date" means the date on which each Plaintiff's Consent to Join form was filed in this Action.
  f. "Plaintiff" and "Plaintiffs" means Serena McDermott, Jennifer Gentry, and the individuals who timely submitted Consent to Join forms in the Action on or before May 23, 2001.
  g. "Plaintiffs' Counsel" means Robert L. Wiggins, Jr., Robert F. Childs, Jr., Ann K. Wiggins, Herman N. Johnson, and Eric

        Bachman of the law firm of Wiggins, Childs, Quinn & Pantazis, and any other lawyers or firms associated with Wiggins, Childs, Quinn & Pantazis in the representation of Plaintiffs in this Action.

  h.    "Release" means the release of claims in the form annexed hereto as Exhibit 1.

  i.    "Shift" means eight (8) hours of work.

  j.    "Special Master" means the person appointed by the Court pursuant to Fed. R. Civ. P. 53, as detailed in Section 5.b(i) of this Agreement.

2.    <u>Settlement Payment</u>: In full and final settlement of all claims that were or could have been asserted in the Action, and subject to the terms and conditions set forth in this Agreement, Defendant shall pay the total sum of $2,251,000.00 plus the mailing costs designated for it to pay in this Agreement. In no event will Defendant be obligated to make any additional payment to or for Plaintiffs and/or Plaintiffs' Counsel with respect to allocations, liquidated damages, costs and/or fees other than the $2,251,000.00 and the mailing costs designated for it to pay in this Agreement. The settlement shall be allocated as follows:

  a.    <u>Payments to Plaintiffs</u>: The total gross sum of $1,500,000.00 shall be available to be allocated to Plaintiffs who timely submitted a Consent to Join form and timely submit a fully executed Release in the amounts set forth in Paragraph 4 of this Agreement, less required withholdings. This sum shall be paid in the manner set forth in Section 5 of this Agreement.

  b.    <u>Payment of Attorneys' Fees, Costs, and Expenses</u>: The total gross sum of $751,000.00 shall be paid to Plaintiffs' Counsel as attorneys' fees, costs and expenses. Defendant will issue a 1099 to Plaintiffs' Counsel in this amount for this payment. Defendant agrees that it does not oppose Plaintiffs' Counsel's application for attorneys' fees, costs, and expenses. Plaintiffs and Plaintiffs' Counsel represent and warrant that they have no other claims for attorneys' fees, costs, or expenses.

3.    <u>No Continuing Liability</u>:

  a.    <u>The Server Claim:</u> The settlement regarding the Server Claim is based upon the Court's specific finding that Cracker Barrel properly compensates its servers at the tipped wage, and that Cracker Barrel is entitled to claim the tip credit for server duties included in its Server Manual. Accordingly, the following facts are approved by the Court:

    (i.)    Except where prohibited by state law, Cracker Barrel has paid and may continue to pay its servers at least $2.13 per hour and claim a tip credit pursuant to 29 U.S.C.A. § 203(m).

    (ii.)    Cracker Barrel servers are required to report 100% of their tips. If a server's reported tips plus the tipped wage paid

3

by Cracker Barrel fail to equal at least the minimum wage for all hours worked during a given work week, Cracker Barrel pays the difference to the server as "minimum wage makeup" compensation.

(iii.) In addition to their primary duty which is to serve food and beverages to customers, Cracker Barrel servers may also be assigned sidework and Management Action Chart ("MAC") tasks, which include restocking, food preparation, and cleaning duties. Sidework and MAC duties are assigned to the servers by dividing the tasks among the servers on duty.

(iv.) In this Action, the Court found, as a matter of law, that Cracker Barrel's assignment of serving duties, sidework, and MAC duties to servers, payment of a tipped wage to servers, and its use of the tip credit for server duties was and is in full compliance with the FLSA. In particular, the Court found that a server who spends "part of [his/her] time" performing related duties does not hold dual jobs within the meaning of 29 C.F.R. § 531.56(e). Examples of related duties include, but are not limited to, cleaning and setting tables, toasting bread, making coffee, occasionally washing dishes or glasses, cleaning the salad bar, placing condiment crocks in the cooler, cleaning and stocking the waitress station, cleaning and resetting tables, and vacuuming. The Court also found that servers may likewise perform maintenance-type tasks if they are assigned generally to the servers as a group and not routinely assigned to specific servers. (See 12/4/03 Report and Recommendation of the Magistrate Granting Defendant's Motion for Summary Judgment on Plaintiffs' Claims Regarding Alleged Non-Server Work; 3/2/04 Order Adopting the 12/4/03 Report and Recommendation; see also 29 C.F.R. § 531.56(e).)

(v.) Accordingly, the Court ruled in this Action that Cracker Barrel's policies regarding the assignment of work to, and compensation of, servers from 1996 to the present have been, and are currently, in full compliance with the FLSA and interpretive regulations.

b. The Off-The-Clock Claim: The settlement regarding the Off-The-Clock Claim is based upon the following facts, which are stipulated by the parties and approved by the Court:

(i.) In their Off-The-Clock Claim, Plaintiffs allege that Defendant had a practice of locking each store's doors when the last customer left after the store's posted closing time and requiring employees to wait off-the-clock involuntarily for a manager to open the locked doors after clocking out. Plaintiffs claim this practice was a failure to pay Plaintiffs for all hours

4

worked in violation of the FLSA.  Defendant denies the Off-The-Clock Claim in its entirety.

  (ii.)    Since at least 1996, Cracker Barrel has had a written policy prohibiting off-the-clock work which is disseminated to employees in the Employee Handbook and PAR materials and communicated to employees during training.

  (iii.)    It is also Cracker Barrel's policy that hourly employees receive a time-stamped receipt each time they clock-in and clock-out.  They additionally receive Weekly Time Reports which state their clock-in and clock-out times for each shift worked each week, and they are required to verify whether or not those times are correct or report any discrepancies to a manager.

  (iv.)    To the extent any manager had knowledge of and allowed an hourly employee to wait off the clock after store closing before exiting the building, such off-the-clock waiting was in violation of Cracker Barrel's written policy stated in b(ii) above.

  (v.)    In October 2000, Cracker Barrel reinforced its policy of no off-the-clock work with a "Don't Work for Free" campaign, which included an article published in a Cracker Barrel newsletter, a scroll printed on all employees' pay stubs, a handout given to all employees with their paychecks, a poster in the employee breakroom of each store, and revision of the Employee Handbook.  The focus of these communications was to reiterate and reinforce existing policy and ensure that an employee's recorded clock out time is the time they are walking out the door.

  (vi.)    In December 2000, Cracker Barrel further issued New Clock-Out Procedures which provided:  "One register, at the end of the cash stand will be used by all 2nd shift-closing employees at the time of clock-out at the end of the night.  Each employee will clock out at this designated register at the time that they are leaving the store – not a second before."  This register includes a touch screen that allows employees to clock out without regard to whether timeclock entries are restricted at other store workstations, and without regard to end-of-day reporting completed by store managers on the closing shift.

  (vii.)    Accordingly, the parties agree that, if the foregoing policies in paragraphs b(ii) through (vi) above are followed by Cracker Barrel, then it will be in compliance with the FLSA and interpretive regulations regarding its procedures for clocking out and exiting employees after store closing.

4. <u>Distributions to Plaintiffs:</u> Defendant shall distribute $1,500,000.00 to Plaintiffs who timely execute and return a Release in the following manner:

    a. <u>Payments with Respect to Server and Off-The-Clock Claims Before January 1, 1997 or After December 31, 2000</u>:

Each Plaintiff who timely executes and returns a Release and who asserted either a Server Claim or an Off-The-Clock Claim on his/her Consent to Join form and worked for the Defendant only before January 1, 1997 or after December 31, 2000 shall receive $50.00, less required withholdings. There are 1191 opt-in Plaintiffs in this category eligible for payouts totaling $59,550.00.

    b. <u>Payments with Respect to Off-The-Clock Claims From January 1, 1997 to December 31, 2000:</u>

Each Plaintiff who timely executes and returns a Release and who asserted an Off-The-Clock Claim and/or worked for the Defendant after January 1, 1997 and before December 31, 2000 shall receive a monetary payment based on the following formula: Take the total number of regular hours recorded in the Defendant's PYPIL databases for the cashier, gift shop, hostess, prep cook, grill cook, dishwasher, backup cook, server assistant, and server positions for the years 1997 through 2000 and divide this number by 8 to determine the number of 8-hour shifts worked. This number of shifts is then multiplied by 5/7 to eliminate Fridays and Saturdays when the Defendant had two managers on duty at closing. The resulting number of 8-hour shifts is then multiplied by 13/60 (the average amount of potential lock-in time determined by experts for the Plaintiffs and Defendant) to determine the total amount of potential time that each Plaintiff could have been locked in off-the-clock. This total amount of potential time was then multiplied by each opt-in Plaintiff's average regular rate of pay in 1997, 1998, 1999 and 2000.[1] There are 9693 Plaintiffs in this category eligible for payments totaling $1,440,450.00.

    c. <u>No Payments to Plaintiffs Submitting Consent to Join Forms to Plaintiffs' Counsel after May 23, 2001, Plaintiffs filing illegible forms, and Plaintiffs for whom employment by Defendant could not be determined:</u>

---

[1] Any server's rate of pay that was less than $5.15 per hour was increased to $5.15 per hour for purposes of settlement.

6

>   There were 556 Plaintiffs who submitted Consent To Join forms after May 23, 2001, 7 Plaintiffs whose Consent To Join forms were so illegible that it could not be determined who they were, and 97 Plaintiffs for whom employment by the Defendant could not be verified. There are 660 Plaintiffs in this category who are not receiving a payment in this case.

   d. Plaintiffs' counsel has provided Cracker Barrel with an electronic file reflecting the amount of payment each Plaintiff is eligible to receive as reflected in paragraphs 4.a and b above and will provide a copy of this file to the Court upon request.

   e. Payment of Taxes, Filing of IRS Forms: Defendant shall make all required deductions and tax payments on the sums paid to the Plaintiffs and shall make all required filings for the employer with the Internal Revenue Service and any state or local tax authorities. The employer portion of payroll taxes (FICA, FUTA, and applicable state payroll taxes) shall be paid by Defendant. Defendant will send all applicable tax reporting forms (W-2) to addresses provided to any Plaintiff who timely executes and returns a Release within the time period permitted by law.

   f. Releases: No Plaintiff shall receive a payment pursuant to this Settlement Agreement unless he or she has executed and returns a Release in the form annexed hereto as Exhibit 1 on or before the deadline for submitting such documents set forth in the Court-approved Notice of Settlement. In the event any Plaintiff fails or refuses to execute and timely return a Release, he or she shall not be entitled to any payment under this Agreement.

5. Payment Procedure.

   a. Preliminary Approval of Notice: On the Effective Date of this Agreement, the parties shall file a Joint Motion for an Order Preliminarily Approving Settlement and Authorizing Issuance of Notice of Settlement with the Court advising the Court of the factual and legal issues in dispute concerning the Server Claims and the Off-The-Clock Claims, the appropriateness of collective treatment of these claims, the sum to be paid to the Plaintiffs regarding these claims, the sum to be paid to Plaintiffs' counsel for its representation of the Plaintiffs, and the applicable statute of limitations. The parties shall further advise the Court of the absence of any continuing liability based upon Cracker Barrel's full compliance with the FLSA with respect to its policies and practices regarding the performance of server duties at the tipped wage at all relevant times, as found by the

7

Court, and with respect to its policies and practices to prevent off-the-clock waiting after store closing from at least December 31, 2000 forward.  The parties will request that the Court enter an Order preliminarily approving the settlement, establishing a for a fairness hearing (if the Court deems such hearing necessary), and authorizing the distribution of a Notice of Settlement (in the form attached as Exhibit 2), subject to such modifications as the Court may determine, consistent with the terms of this Agreement.

b.  <u>Mailing of Notice</u>:  Plaintiffs' Counsel shall cause the Court-approved Notice to be mailed to each Plaintiff at his or her last known address, by United States mail, along with a Release.

  (i.)  <u>Special Master</u>:  The Court may designate a Magistrate Judge to serve as a Special Master, pursuant to Federal Rule of Civil Procedure 53, to hear and determine any challenges to this Settlement.

  (ii.)<u>Objection Procedure</u>:  To object to any term of this settlement, a Plaintiff must submit a written Objection under oath and send it to the Court or Special Master at the address indicated in the Notice; such objection must be postmarked and mailed by October 6, 2005.  The Court or Special Master will docket receipt of all such Objections so that all counsel receives notice of the same.  Plaintiffs' Counsel and/or Defendant's Counsel may submit to the Court or Special Master any records for any objecting Plaintiff, which shall be deemed admissible and competent evidence of the facts stated therein.  The Court or Special Master shall issue a single written ruling determining all timely postmarked Objections and mail copies of the Special Master's ruling to objecting Plaintiffs. The determination of the Court or Special Master shall be final and binding and not subject to appeal.

c.  <u>Fairness Hearing</u>:  At the discretion of the Court or the Special Master, a Fairness Hearing may be set to hear the Objections of the Plaintiffs. At this hearing, or by written filing if the Court finds no hearing is necessary, the parties shall provide the Court with a final Allocation of Payments, papers supporting Plaintiffs' Counsel's application for approval of their request for attorneys' fees, costs, and expenses, and responses to any Objections to the settlement timely postmarked and received by the Court.  If the Court thereafter gives final approval to the Settlement Agreement, Plaintiffs' and Defendant's Counsel shall prepare and file with the Court within ten (10) business days of its approval, a Proposed Order Finally Approving The Settlement Agreement ("Final Approval Order").  Within this ten (10) business day period, Plaintiff's Counsel shall deliver to Defendant a spreadsheet reflecting all Releases timely postmarked and received by Plaintiffs' Counsel or any settlement

administrator hired by it to administer the mailing process required of Plaintiffs' Counsel. The original Releases shall be provided to Defendant by Plaintiffs' Counsel or any settlement administrator hired by it within five (5) business days after the time for appeal has run as defined in Paragraph 5(f)(i) and (ii) below.

d. <u>Denial of Approval</u>: If, after all parties have had an opportunity to be heard, and the Court has considered the legal and factual issues genuinely in dispute and the risks inherent in further litigation and determines that the settlement set forth herein is not fair to the Plaintiffs and/or consistent with law, then this settlement shall be null and void. The Court shall have no authority to modify the terms of the proposed settlement without the consent of the parties.

e. <u>Final Approval</u>: If, after all parties have had an opportunity to be heard, the Court considers the legal and factual issues genuinely in dispute and the risks inherent in further litigation and determines that the settlement set forth herein is fair to the Plaintiffs and consistent with law, the Court shall enter the Final Approval Order as set forth in paragraph 5.c above.

f. <u>Distribution of Payments</u>: Upon expiration of the time for appeal of the Final Approval Order:
   (i.)   <u>If no appeal has been timely filed</u>: Within ten (10) business days Defendant shall deliver to Plaintiffs' Counsel the payment for attorneys' fees, costs and expenses set forth in Section 2b, and within twenty (20) business days Defendant shall mail checks to Plaintiffs who timely submitted executed Releases, for the payment set forth in Section 2a via first class mail to the addresses provided on their Releases. Defendant agrees to honor payments mailed to Plaintiffs for a period of six (6) months from the date on the check.
   (ii.)   <u>If an appeal is filed</u>: Upon expiration of the appeal process, if the Final Approval Order is upheld, within ten (10) business days after entry of the mandate of the appellate court, Defendant shall perform the acts detailed in Section 5(f)(i) above. If the Final Approval Order is not upheld, this Agreement shall be null and void.

g. <u>Untimely Releases or Unclaimed Funds</u>: Any funds allocated in Paragraph 4.a and b above which are not payable due to any Plaintiff's failure to timely execute and return a Release including returned checks received by Defendant within sixty (60) days of their original postmark date (hereinafter "Unclaimed Funds"), shall be utilized to reimburse the parties in the following order of priority until exhausted:

9

      (i.) <u>Cost of Mailings</u>:  Plaintiffs' Counsel and Defendant will jointly be reimbursed for documented costs associated with the two mailings required of them under this Settlement Agreement on a *pro rata* basis from Unclaimed Funds, if any.
      (ii.) <u>Payroll Taxes</u>:  Defendant shall be reimbursed for the employer portion of all payroll taxes (FICA, FUTA, and applicable state payroll taxes) paid by Defendant from Unclaimed Funds, if any.
      (iii.) <u>Charitable Contribution</u>:  Unclaimed Funds, if any, shall be paid by Defendant as a charitable contribution to an organization of its choice.  Defendant shall provide Plaintiffs' Counsel with proof of such payment.

6. <u>Non-admission and Non-publicity</u>:  Nothing in this settlement shall be construed as a finding or admission that Defendant has violated the FLSA or any other law, statute or regulation, or committed any wrongdoing whatsoever, and Defendant specifically denies that it has committed any such violation or wrongdoing.  No party or Counsel shall directly or indirectly publicize the terms of this settlement by issuance of a press release or otherwise, except as required by law.
7. <u>Dismissal</u>:  Upon expiration of the time for appeal of the Final Approval Order with no appeal filed, or upon the conclusion of any appeal that results in the Final Approval Order being upheld, the parties shall file a Stipulation of Dismissal with Prejudice in an agreed-upon format.
8. <u>Choice of Law</u>:  Except to the extent governed by federal law, this Settlement Agreement and all payments made pursuant to it shall be governed by the laws of the State of Georgia, without regard to choice of law provisions.
9. <u>Rules of Construction</u>:  This Agreement shall be construed as a whole, according to its fair meaning.  It shall not be construed strictly for or against any party.  Unless the context indicates otherwise, the term "or" shall be deemed to include the term "and" and the singular or plural number shall be deemed to include the other.  Captions are intended solely for convenience of reference and shall not be used in the interpretation of this Agreement.

Approved as to form and content, this 27th day of May, 2005.

      Wiggins, Childs, Quinn & Pantazis
      <u>By: /s/ Robert F. Childs, Jr.</u>
      Plaintiffs' Lead Counsel

Approved as to form and content, this 27th day of May, 2005.

        Ashe, Rafuse & Hill LLP
        <u>By: /s/ Tracey T. Barbaree</u>
        Defendant's Counsel